UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Cherokee Wadelton, Independent Administrator of the Estate of Chevy R. Wadelton, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>Whiteside County, John Booker, and Kimberly Cavazos,<br><br>Defendants. | No. 3:23-cv-50104<br><br>Honorable Iain D. Johnston |

### MEMORANDUM OPINION AND ORDER

Plaintiff Cherokee Wadelton's brother, Chevy Wadelton, died by suicide while in custody at the Whiteside County Jail. As the administrator of Mr. Wadelton's estate, Ms. Wadelton brings this action against Defendants Whiteside County, Whiteside County Sheriff John Booker, and Whiteside County Lieutenant of Corrections Kimberly Cavazos. Before the Court is Defendants' motion for judgment on the pleadings. For the following reasons, the motion is granted in part and denied in part.

**I. Background**

On March 22, 2022, Mr. Wadelton was taken into protective custody by law enforcement in Prophetstown, Illinois. Dkt. 1 at 5. By the next day, he was taken to the Whiteside County Jail. *Id*. There, he had a medical consultation, which resulted in his being placed on suicide watch. *Id*. At around 1:28 AM on March 25, he was

1

discovered unresponsive in his cell. *Id.* at 6. Mr. Wadelton was pronounced dead at that time by the Whiteside County coroner. According to the coroner's certificate of death, Mr. Wadelton died by hanging himself. *Id.*

## II. Legal Standard

When challenging the sufficiency of a complaint, a motion for judgment on the pleadings under Rule 12(c) is governed by the same standard for a motion to dismiss under Rule 12(b)(6). *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). The only difference is timing—a Rule 12(c) motion is filed after the answer and affirmative defenses are filed. *Id.* The court views the complaint's allegations and reasonable inferences in favor of the nonmovant to decide whether the complaint states a claim that is plausible on its face. *Id.*; *Vinson v. Vermilion County*, 776 F.3d 924, 928 (7th Cir. 2015). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## III. Analysis

Defendants moved to dismiss or partially dismiss eight of the nine counts in the complaint. Ms. Wadelton agreed to the dismissal of the following: the Eighth Amendment claims under § 1983 (Counts I, IV, and VII), the claims against Lieutenant Cavazos (Counts VII–IX), the prayer for punitive damages under § 1983, and the prayer for attorneys' fees under state law. The remaining issues from Defendants' motion for the Court to resolve concern the Illinois Survival Act claims and the claims against Whiteside County.

### A. Illinois Survival Act Claims (Counts III, VI)

Defendants argue that the Illinois Survival Act does not create a cause of action, so the claims must fail. Dkt. 29 at 10–11. Ms. Wadelton responds that the Survival Act allows her to bring claims arising from conduct that occurred before Mr. Wadelton's death, whereas the Wrongful Death Act addresses the death itself and what happened after. Dkt. 34 at 7.

Illinois courts agree with both parties. The Survival Act doesn't create a cause of action. *Moon v. Rhode*, 67 N.E.3d 220, 230 (Ill. 2016). But although the statute doesn't create a cause of action, that isn't necessarily fatal for the counts labeled "State Law Survival Act." Under the Federal Rules of Civil Procedure, plaintiffs are required to plead facts, not legal theories or causes of action. *Shea v. Winnebago Cnty. Sheriff's Dep't*, 746 F. App'x 541, 545 (7th Cir. 2018); *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 517–18 (7th Cir. 2015). If the underlying factual allegations in these counts are sufficient to state a claim (for example, a tort claim) that Mr. Wadelton could have brought while he was still alive, then the Survival Act need not create an independent cause of action. *See Vincent v. Alden-Park Strathmoor, Inc.*, 948 N.E.2d 610, 614 (Ill. 2011).

And—by not arguing it—Defendants have forfeited the position that the complaint fails to state a claim because of the factual allegations that have been pleaded for the Survival Act counts. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697

3

F.3d 534, 538 (7th Cir. 2012). The Survival Act claims survive, subject to the other grounds for dismissal in this opinion.[1]

### B. Claims Against Whiteside County

#### 1. Section 1983 (Count I)

Defendants argue that the complaint fails to plead actions attributable to Whiteside County, arguing both that there are no well-pleaded customs or policies and that there are no actions attributable to Whiteside County. Dkt. 29 at 5–6, 8–9. Ms. Wadelton responds that the multiple alleged deaths of individuals detained at the Whiteside County Jail show a custom of denying necessary medical care and that Whiteside County had the authority to assign additional duties to county officers, such as Sheriff Booker. Dkt. 34 at 4–5; *see also* Dkt. 1 at 6–7.

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a plaintiff can bring a § 1983 claim against a unit of local government, such as a county. *Stockton v. Milwaukee County*, 44 F.4th 605, 617 (7th Cir. 2022). The plaintiff must connect the deprivation of a federal right to county action, which can take the form of "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (quoting *First Midwest Bank v. City*

---

[1] Although labels don't determine claims, if Ms. Wadelton chooses to amend her complaint, she might want to consider language that's more descriptive than "State Law Survival Act – Willful and Wanton Conduct." *See Ziarko v. Soo Line R.R.*, 641 N.E.2d 402, 406 (Ill. 1994) ("There is no separate and independent tort of 'willful and wanton' misconduct.").

4

*of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021)). Inaction, "if it reflects 'a conscious decision not to take action,'" can also give rise to liability. *Id.* (quoting *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017)).[2] The plaintiff must also show that the county action amounts to deliberate indifference and was the "moving force" behind the constitutional injury. *Id.*

Ms. Wadelton's argument—a *de facto* custom theory under *Monell*—requires her to "allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Although there are no "bright-line rules" concerning how many times offending conduct must occur to amount to a "widespread custom or practice . . . there must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) (internal quotations and citation omitted). Isolated incidents or "a few sporadic examples of improper behavior" are not enough. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (quoting *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021)).

The four other deaths that are included in the complaint don't have much of a common thread to tie them together. Based on the complaint's characterization of these incidents, one of the individuals had a history of mental illness and two had preexisting medical issues, but there are no factual allegations regarding lack of

---

[2] As Rush explained in *Freewill*, "If you choose not to decide, you still have made a choice." *Freewill Lyrics*, Rush.com, https://www.rush.com/songs/freewill (last visited Apr. 5, 2024).

medical treatment or causes of death. *See* Dkt. 1 at 6–7. There's nothing that allows for the inference of deliberate indifference towards these individuals. *Cf. Thomas*, 74 F.4th at 524–25 (finding no widespread practice of excessive force based on two isolated incidents where the details were "so scarce" that the court could not infer any use of excessive force). The *Monell* claim against Whiteside County is dismissed without prejudice.

    2.    *State law claims (Counts II–III)*

For the state law claims, Defendants argue that there is no *respondeat superior* liability under state law for Whiteside County to be held liable for a sheriff's conduct. Dkt. 29 at 6–7. Indeed, the Illinois Supreme Court has held that a county sheriff is an officer and not a mere employee, so there's no agency relationship that would give rise to vicarious liability. *Moy v. County of Cook*, 640 N.E.2d 926, 929–31 (Ill. 1994). Ms. Wadelton does not respond to this argument, instead focusing on the *Monell* claim against Whiteside County. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). The state law claims against Whiteside County are dismissed.

*   *   *

Although all the claims against Whiteside County are dismissed, Whiteside County is not terminated from the case; it is still a necessary party to this action because it will ultimately be liable for any judgment against Sheriff Booker. *See Robinson v. Sappington*, 351 F.3d 317, 338–39 (7th Cir. 2003).

## IV.   Conclusion

Counts I–III and VII–IX are dismissed. The Eighth Amendment claim under Count IV is dismissed, and Count IV's prayer for punitive damages is stricken. The prayer for attorneys' fees under Counts V–VI is stricken. Lieutenant Cavazos is terminated from the case.

The dismissals are without prejudice. Ms. Wadelton has until May 6, 2024, to amend, and if an amended complaint is not filed by that date, the dismissals without prejudice will convert to dismissals with prejudice.


Date: April 8, 2024

_____
Honorable Iain D. Johnston
United States District Judge